

# Helen F. Dalton and Associates, P.C.
## Attorneys at Law

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
T. 718.263.9591 ◆ F. 718.263.9598

April 8, 2019

**VIA ECF**

The Honorable Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **Morales, et al. v. Finale Building and Construction Corp., et al.**
     **18-CV-4200 (SDA)**

Dear Judge Aaron:

We represent the Plaintiffs in the above-referenced matter and we submit this joint motion for approval of the Settlement Agreement (attached hereto as **Exhibit 1**). Pursuant to Your Honor's March 14, 2019 Order, the parties provide the following information to aid the Court in determining whether the settlement is fair and reasonable:

**The Settlement Terms**

The parties agreed to resolve this matter for $45,000.00 payable in six monthly installments at the Settlement Conference before Your Honor on March 12, 2019.

**Plaintiffs' Claims**

Plaintiffs, Elihu Romero Morales, Sergio Avila Lopez and Willis Hernandez (collectively, "Plaintiffs"), are former employees of Defendant Finale Building and Construction Corp. ("Finale"). Plaintiffs brought this lawsuit claiming that Defendants failed to pay Plaintiffs proper overtime wages when Plaintiffs worked in excess of forty (40) hours per week in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiffs alleged that they were employed by Defendants for approximately three months and regularly worked sixty (60) to seventy (70) hours per week. Plaintiffs also brought claims under the NYLL for Defendants' failure to provide wage notices and weekly wage statements.

**Defendants' Defenses**

Defendants maintain that the amounts claimed by the Plaintiffs are excessive. While Corporate Defendant acknowledges that some overtime was worked, Defendants records indicate that overtime was de minimus. Further, corporate Defendant maintained on site job records indicating hours worked and payments made to each claimaint. All payments were made by check and claimaints were paid well in excess of the minimum wage.

**Defendants' Potential Monetary Exposure/Plaintiffs' Range of Recovery**

**Plaintiffs' Position:** Plaintiffs' calculation of damages was approximately $138,537.00 for all three Plaintiffs. This figure included all alleged unpaid wages, liquidated damages, and statutory penalties. This figure did not include attorneys' fees. As such, Plaintiffs' range of recovery was $0.00 to $138,537.00.

**Defendants' position:** Defendants damages were in the $10,000.00 range for all three claimaints.

**Strengths and Weaknesses of Plaintiffs' Case and Defendants' Defenses**

**Plaintiffs' Position:** Plaintiffs believe that their claims are strong in light of the paucity of records maintained by Defendants. Defendants provided some time records, but these records simply listed the hours that Defendants alleged Plaintiffs worked each week. Plaintiffs had never seen these records and dispute their accuracy. Plaintiffs were not required to punch in and out or sign in and out during their employment.

**Defendants' Position:** Defendants defense is based upon the job site records showing actual hours worked and the monies paid to claimants by check.

**Other Factors in Support of Finding that the Settlement is Fair and Reasonable**

Although Plaintiffs were confident that they would succeed on their claims should this matter have gone to trial, there were a number of factors that supported settling at the March 12, 2019 conference.

The parties had only begun formal discovery in this matter. Plaintiffs' estimated that a trial date was at least one year away. Should the matter have gone to trial, Plaintiffs would have taken multiple days off from their current jobs and Plaintiffs would have incurred significant expenses preparing exhibits for trial and hiring court-licensed translators for each Plaintiff.

As a result, settlement at this early juncture of the case relieves both parties of the significant burdens and expenses that would have been otherwise incurred during the course of discovery and possible trial.

Plaintiffs' preference was to secure a settlement at amount lower than their claimed damages early in the litigation process rather than risk going to trial at a much later date in the future. Furthermore, Plaintiffs' recovery is squarely in the range of potential recovery should the matter have gone to trial.

**Plaintiffs' Counsel's Attorneys Fees**

The parties agreed to settle this matter for a global settlement of $45,000.00.

Plaintiff's counsel respectfully requests $837.00 for identifiable expenses, which includes: the Southern District of New York filing fee ($400.00), the costs of serving the Defendants through their process server, Anke Judicial Services ($390.00), the cost of serving the Defendant corporation through the Secretary of State ($40.00), and postage fees ($7.00).

Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($44,163.00), or approximately $14,721.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore the total amount to be paid to the attorneys in this matter is $15,558.00.

Plaintiff's attorneys and their client have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). The Court in *Cheeks* did not assert that the Court needs to approve the attorney fee agreement in each FLSA case. The Court there denied the attorneys' fees because the attorneys were seeking to recover between 40 and 43.6% of the total payment with no justification as to why the attorneys would be entitled to an amount larger than the norm. *Cheeks v. Freeport Pancake House, Inc.,* 796 F3d 199, 206 (2d Cir 2015)(*citing Lopez v Nights of Cabiria, LLC,* 96 F Supp 3d 170, 181-82 (SDNY 2015). Copies of Plaintiffs' signed retainers are attached hereto as **Exhibit 2**.

Here, Plaintiffs' counsel is requesting attorneys' fees in the amount of one-third of the settlement total, pursuant to the retainer agreement entered into with the client. Since one-third is the standard amount allowed to attorneys in FLSA cases, and the Plaintiffs entered into a contract for this amount with their counsel, this amount is not unreasonable, and *Cheeks* does not disagree.

However, as Your Honor has requested Plaintiffs' contemporaneous billing records, please see the records attached hereto as **Exhibit 3**. Plaintiffs' attorneys fees via the lodestar method are $16,620.00. Plaintiffs' counsel spent a combined 62.2 attorney hours and 16.1 paralegal hours working on this matter from intakes of the clients in 2017 through finalizing settlement in 2019.

In closing, the parties respectfully submit that the Settlement Agreement is fair and reasonable, and therefore request that the Court approve or so order the Settlement Agreement.

We thank Your Honor for his continued consideration on this matter.

Respectfully submitted,

Roman Avshalumov, Esq.
James O'Donnell, Esq.
Helen F. Dalton & Associates, P.C.
80-02 Kew Gardens Road
Suite 601
Kew Gardens, New York 11415
(T): 718-263-9591